## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

**v.**

       **Case No. 3-05-cr-30115-SPM**

**TAVON A. UPTON,**

       **Defendant.**

## <u>MEMORANDUM AND ORDER</u>

**McGLYNN, Circuit Judge:**

Pending before the Court is a motion to reduce sentence pursuant 18 U.S.C. § 3582 (c)(1)(A)(i) (Doc. 172). For the reasons set forth below, the Court denies the Motion.

### FACTUAL & PROCEDURAL BACKGROUND

On July 21, 2005, Upton was indicted by a grand jury on the following two counts: (1) Possession of weapon by a felon, in violation of 18 U.S.C. § 922 (g)(1); and, (2) Possession of cocaine base with intent to deliver, in violation of 21 U.S.C. § 841 (a)(1) (Doc. 1). On April 5, 2006, the grand jury issued the following five count superseding indictment against Upton: (1) Possession of weapon by a felon, in violation of 18 U.S.C. § 922 (g)(1); (2) and (3) Possession of cocaine base with intent to deliver, in violation of 21 U.S.C. § 841 (a)(1); (4) Possession of cocaine mix with intent to traffic while in possession of a firearm, in violation of 18 U.S.C. § 924(c)(1); and, (5) Forfeiture of firearm involved in counts 1 and 4, in violation of 18 U.S.C. §§ 924(c)(1) and 924 (d)(1) (Doc. 84). On April 26, 3006, following a jury trial, Upton was found guilty of counts

1-3 and not guilty of count 4 (Doc. 109). On February 21, 2007, defendant was sentenced to the U.S. Bureau of Prisons ("BOP") for 288 months on count 1 and 240 months on each of counts 2 and 3, all to run concurrently (Doc. 146).

On February 27, 2007, Upton filed his notice of appeal (Doc. 154). On February 4, 2008, the Seventh Circuit issued a mandate that affirmed the judgment of the district court (Doc. 167).

On November 8, 2020, Upton filed a motion in this court to reduce sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), arguing that extraordinary and compelling reasons warrant modification of his sentence (Doc. 172). Upton cites the current Covid-19 pandemic, noting that he suffers from asthma, high blood pressure, anxiety and a swollen prostate (*Id.,* p.4). He claims the conditions, specifically the asthma and high blood pressure put him at an increased risk of developing a severe illness were he to contract Covid-19 (*Id.*).

Upton has provided information from the CDC regarding "people at increased risk factors for severe illness" but does not provide any medical evidence to support his claim, which he claims the facility was unwilling to provide (*Id.*). Upton states he is prescribed 20 mg of propranolol twice daily for severe anxiety and .4 mg of tamsulosin ccl for his prostate, but does not indicate any treatment for the asthma or high blood pressure (*Id.*)

Upton is currently incarcerated at FCI Bennettsville (*Id.,* p. 1). As of March 15, 2021, Upton has a release date of 2/20/25.[1] Defendant cites information from CBS

---

[1] According to https://www.bop.gov/inmatelocator/.

News about the risks of Covid-19 to inmates in the prison population but does not give any information or statistics specific to the Bennettsville facility (*Id.*).

## LEGAL STANDARD

Under the First Step Act, inmates are authorized to bring their own motions for compassionate release after first exhausting their administrative remedies with the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). A defendant may be eligible for compassionate release if the Court finds "extraordinary and compelling reasons" to warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A). The Court also must find that the requested sentence reduction is "consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

Congress has tasked the Sentencing Commission with compiling "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Commission has specified that certain circumstances surrounding the inmate's medical condition, age, and family situation will constitute extraordinary and compelling reasons. *See* U.S.S.G. § 1B1.13. The Sentencing Commission also gives the Director of the Federal Bureau of Prisons discretion to distinguish other grounds that could be extraordinary and compelling enough to merit a sentence reduction, either on their own or in combination with another listed condition. *See id.* at cmt. n.1(D).

Courts have also, in certain instances, taken it upon themselves to identify non-enumerated grounds constituting extraordinary and compelling reasons for compassionate release, even where the Bureau of Prisons has not done so. *See, e.g.,*

*United States v. Halliburton*, 2020 WL 3100089 (C.D. Ill. June 11, 2020)(finding extraordinary reasons where defendant had underlying health problems in conjunction with the Covid-19 pandemic); *United States v. Coles*, 2020 WL 1976296 (C.D. Ill. April 24, 2020); *United States v. Lewellen*, 2020 WL 2615762 (N.D. Ill. May 22, 2020) (Noting court has joined "vast majority" of district courts in looking past "guideposts" of §1B1.13 criteria to construe what constitutes extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i) (quoting *United States v. Cardena*, No. 09-CR-0332 (-11), slip op. at 6 (N.D. Ill. May 15, 2020) (ECF No. 1890)).

If an inmate can show that one of the eligibility criteria is applicable, a court must then assess whether a reduction would be appropriate under the statutory sentencing factors described in 18 U.S.C. § 3553(a). U.S.S.G. § 1B1.13. Lastly, a court must determine that the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). Defendant bears the burden of proving entitlement to relief under 18 U.S.C. § 3582(c)(1)(A)(i). *See United States v. Gold,* 459 F.Supp.3d. 1117 (N.D. Ill. May 6, 2020)

### ANALYSIS

### 1.  **Extraordinary and Compelling Reasons**

District courts have a limited ability to modify an imposed term of imprisonment. 18 U.S.C. § 3582 (c)(1)(A). Indeed, defendant must first exhaust all administrative rights with the BOP before bringing a motion. *Id.* In this case, the only applicable ground for modification is after a finding that: "(i) extraordinary and compelling reasons warrant such a reduction" *Id.*

General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release. *Gold,* 459 F.Supp.3d at 1120. What does constitute extraordinary and compelling reasons has been the topic of application notes, which lists three such examples that justify a sentence reduction:

> (1) A terminal illness or other serious medical condition from which he is not expected to recover;
> (2) Advanced age, or at least 65 years old;
> (3) Death or incapacitation in his immediate family, which would leave him the only caregiver for a child, spouse or partner.

Upton does not satisfy any of the factual predicates listed by the Sentencing Commission as constituting "extraordinary and compelling reasons" justifying compassionate release. He is a 44 year old male who has not been diagnosed with a terminal illness or other serious medical condition and he does not indicate any family circumstances calling for him as a caregiver.

## 2.  Medical Condition

Upton does indicate certain underlying medical conditions that "might make him at an increased risk for severe illness from Covid-19", including asthma and high blood pressure[2]; however, he has provided no information to support the contention that these conditions severely increase *his* vulnerability to Covid-19 to the point that compassionate release might be warranted; (Doc. 172, p. 5)(emphasis added). Additionally, the evidence supporting those medical conditions is weak, at best.

---

[2] See CDC guidelines provided by defendant on page 5 of his Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

Upton claims to suffer from asthma, although he does not provide any information regarding his asthma, other than the bare allegation (Doc. 172, p. 4). Upton does not indicate when he was diagnosed with the condition, any treatment or any problems that he endures as a result of his asthma. Additionally, the PSI in his underlying criminal case does not indicate any respiratory illnesses.

In their response to the motion, the government provides Upton's medical records from the BOP (Doc. 177-C, D). Within those records, there is no mention of any asthma, nor any evidence that he ever complained of respiratory deficiencies (*Id.*). Upton sought medical treatment in BOP in December and August of 2019 and denied any respiratory conditions. In fact, in the August 26, 2019 record, the doctor specifically noted that Upton had "no difficulties in breathing" and no "shortness of breath" (Doc. 177-C, pp. 11, 18 and 23). On that date, Upton also denied any "significant past lung history" (*Id.*). These medical records also support no mention of any asthma or respiratory condition or lung history from the presentence investigation report entered on February 23, 2007 (Doc. 147).

With respect to the high blood pressure, it was mentioned in the PSR that Upton was treated for high blood pressure in 2007 (*Id.*). However, the BOP medical chart indicates that "hypertension" was a medical condition that was "resolved" in 2013 (Doc. 177-D, p. 26). The records do not list any current complaints or treatments regarding high blood pressure or hypertension, and Upton himself did not mention anything other than the bare allegation that he suffered from high blood pressure. He did not provide any evidence to support his contention. He does not indicate

whether he has any complaints or whether he is on any treatment for high blood pressure.

The only two medical conditions that Upton expands upon, anxiety and a swollen prostate, do not fall within the CDC guideline for concern with COVID-19 (Doc. 172, p. 5). Upton indicated that he took 20 mg of propranolol twice daily for his severe anxiety (*Id*. at 3). He also asserted that he takes .4 mg of tamsulosin ccl for his prostate, which must be taken 30 minutes before his meal at the same time every day (*Id.)*. Again, these two conditions do not support compassionate release.

### 3. Bureau of Prisons

Upton is incarcerated at Bennettsville-FCI but does not provide any information specific to that institution. Instead, he directs his complaints against the entire prison system claiming that covid-19 poses acute risks to inmates and correctional staff (Doc. 172, p. 16). To support this contention, Upton cites to a CBS News report from March 19, 2020, which was more than six months before he filed his motion (*Id*.).

The government's response provides more recent information and also provides information relative to Bennettsville-FCI (Doc. 177, p. 13). BOP has been working hard to establish a plan to protect both staff and inmates from contracting the virus (*Id)*. All facilities test regularly to catch any outbreaks quickly (*Id*. at 14). All staff and inmates have been issued face masks and are strongly encouraged to wear an appropriate face covering when social distancing cannot be achieved (*Id*. at 15). Group gatherings are limited and numerous restrictions have been established with respect to access to the commissary, laundry, showers, telephones and computers (*Id*.).

Additionally, each facility may have more limitations depending on the amount of cases at that facility (*Id.*).

With respect to Bennettsville-FCI, as of March 15, 2021, 176 inmates have tested positive[3], which is an increase of 44 since the filing of the government's response date of December 8, 2020 when 132 inmates had tested positive (*Id.* at 13). There have been no deaths at the facility due to Covid-19 (*Id.*). Furthermore, the data shows that 87 staff members and 132 inmates have been fully inoculated at Bennettsville-FCI, with the BOP prepared to receive and administer to all willing inmates as soon as it is made available.[4]

Upton has provided no information as to how, were he released, travelling from South Carolina to Illinois will be guaranteed to be covid-19 safe and/or safer than the confines of Bennettsville-FCI. Even courts that have expressly taken a "liberal view" of the Sentencing Commission's policy statements have denied motions brought by inmates housed in facilities with no evidence of widespread transmission and whose individual risk factors were shared by "a host of other prisoners". *Gold*, 459 F.Supp at 1121.

### 4. Threat to Community

This Court would be remiss if it did not look at defendant's criminal history as well as his current situation to determine whether he remains a threat to the community in its inquiry as to whether a sentence should be modified.  See Federal

---

[3] According to the information provided on the Bureau of Prisons website: www.bop.gov/coronavirus/.
[4] This information was also obtained for the website, which indicates full time staff is inoculated first as they come and go from the facilities and "present a higher vector for transmission".

Sentence Guideline, 1B1.13 (compassionate release allowed only when "the defendant is not a danger to the safety of any other person or the community).

Upton has an extensive criminal history that started at the age of 13 (Sealed Doc. 147). His PATTERN score (Prisoner Assessment Tool Targeting Estimate Risk and Need) places him at the "high" risk of recidivism level, indicating that he is not a good candidate for release and is a danger to the community (Doc. 177-E). He has also been the subject of sixteen different disciplinary violations since entering prison, including numerous instances involving drugs or alcohol, possession of narcotics, possession of unauthorized items, threatening bodily harm and fighting (Doc. 177-A).

In the underlying criminal case, Upton was convicted after a jury trial of possessing a firearm as a felon and trafficking drugs (Sealed Doc. 147). Before that, Upton had six prior domestic battery convictions, along with an aggravated battery with a firearm (*Id.*). Most of those offenses were committed while he was on a period of supervised release (*Id.*).

Based upon his current PATTERN score and his criminal history, Upton does not appear to be a viable candidate for sentencing modification. To the contrary, his continued imprisonment is warranted.

## CONCLUSION

In light of the foregoing, this Court cannot find extraordinary and compelling reasons justifying compassionate release nor can this Court determine that Upton would not present a threat. As such, the Motion for Compassionate Relief (Doc. 172) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:  March 16, 2021**

> **/s/ Stephen P. McGlynn**
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**